UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEBRA ANN ALEXA,<br>Plaintiff,<br>vs.<br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br>Defendant. | No. 12-cv-346-JPH<br>ORDER ON SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment. ECF No. 16, 18. The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the parties' briefs, the court **grants** defendant's motion for summary judgment, **ECF No. 18**.

## JURISDICTION

Alexa applied for disability insurance benefits (DIB) and supplemental security income (SSI) benefits on February 13, 2009. She alleged disability beginning April 7, 2008 (Tr. 156-58, 164-67). Benefits were denied initially and

on reconsideration (Tr. 111-18, 121-24). ALJ Gene Duncan held a hearing on May 26, 2010 (Tr. 40-106) and issued an unfavorable decision September 3, 2010 (Tr. 13-27). On April 13, 2012 the Appeals Council denied review (Tr. 1-3). The matter is now before the Court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review May 10, 2012. ECF No. 1, 5.

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision and the briefs of the parties. They are only briefly summarized as necessary to explain the court's decision.

Alexa was 39 years old at onset. She graduated from high school. In 1992 she earned a two-year A.A.S. degree in printing. Past relevant work includes fish processing, telephone soliciting, cleaning, working as a home health attendant, store laborer, sales clerk and cashier. She last worked at Walmart for eight months, and stopped working in April 2007 or 2008.

She alleges disability based on physical and mental limitations. Alexa testified she can sit for an hour, stand ten minutes, walk a half block and lift twenty pounds. She has severe depression that causes problems with focus, concentration and memory (Tr. 42-45, 66, 69-74, 188, 191-92, 272, 655-56).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423 (d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process or determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which

compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. §404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the

Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence

supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

At step one ALJ Duncan found Alexa did not work at SGA levels after onset in April 2007 (Tr. 15). At steps two and three, he found she suffers from morbid obesity, hypertension and depression, impairments that are severe but do not meet or medically equal the severity of a listed impairment (Tr. 15-16). He found her less than fully credible (Tr. 19). The ALJ assessed a residual functional capacity (RFC) for a range of sedentary work (Tr. 17). At step four, the ALJ found Alexa is

unable to perform any past relevant work (Tr. 25). At step five, relying on a vocational expert, he found she can perform work as a charge account clerk and surveillance system monitor (Tr. 26). Accordingly, the ALJ found Alexa has not been disabled from onset through the date of his decision (Tr. 27).

## ISSUES

**A**lexa alleges the ALJ improperly weighed the medical evidence. Specifically, she alleges the ALJ erred at step two by failing to find additional physical and mental impairments severe. She alleges the ALJ erred when he ignored the personality [disorder] diagnosed by Dr. Bostwick, whose opinion he purported to give significant weight. She alleges the ALJ should have called a psychological expert to testify. Last, she alleges the ALJ's hypothetical failed to include all limitations. ECF No. 17 at 10-18. The Commissioner responds that the ALJ properly weighed the evidence and asks the Court to affirm. ECF No. 19 at 4.

## DISCUSSION

### A. Step two

Alexa alleges the ALJ should have found the following additional impairments severe: polycystic ovarian syndrome (PCOS), obstructive sleep apnea, narcolepsy, somatoform disorder and personality disorder. ECF No. 17 at 10. The Commissioner responds that this assertion lacks specificity in the briefing, lacks analysis and should be considered forfeited as it is too undeveloped to be

capable of assessment. ECF No. 19 at 8-12. The Court agrees with the Commissioner and is inclined to reject the argument based on inadequate briefing. *See Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Rattlesnake Coalition v. United States EPA*, 509 F.3d 1095 (9th Cir. 2007); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994); *Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003). In the interest of fairness and giving the benefit of the doubt to plaintiff, the Court considers the step two argument notwithstanding the inadequate briefing.

When he weighed the severity of alleged impairments, the ALJ considered the opinion of Allen Bostwick, Ph.D., who performed a consultative evaluation after the hearing at the ALJ's request (Tr. 654-70). He also considered Alexa's credibility and the record as a whole.

*Credibility*

To aid in weighing the conflicting medical evidence, the ALJ evaluated Alexa's credibility, and, as noted, found her less than fully credible (Tr. 19). Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations. *Andrews v.*

*Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reason for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Although there is evidence of malingering in this case, the ALJ's reasons are nonetheless clear and convincing.

Alexa vaguely challenges the ALJ's negative credibility assessment by alleging the ALJ erred when he failed to credit her complaints of disabling daytime sleepiness. ECF No. 17 at 11. The Commissioner responds that the ALJ's reasons for his credibility assessment are clear, convincing and supported by substantial evidence. ECF No. 19 at 11-12, citing *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ notes Alexa denied narcolepsy in November 2008. She was tested

in January 2009 and diagnosed with mild sleep apnea and hypersomnia, and started using a C-PAP machine. Treatment records in April 2009 show daytime sleepiness had decreased, sleep quality improved and energy increased. In May and October 2010 she was still doing well using the machine (Tr. 20, 328, 624). The ALJ found Alexa's complaints were not supported by the medical evidence.

The ALJ relied on the tendency to malinger when he weighed the validity of Alexa's complaints. Mahlon Dalley, Ph. D., evaluated Alexa in June 2010. He included a rule out malingering diagnosis, as he had in an earlier report in October 2009. [The earlier report is referenced but not part of this record.] Malingering or over-reporting on a majority of the tests Dalley administered supports finding her less than fully credible, as does Dr. Bostwick's later malingering diagnosis (Tr. 23, 25, 662-63).

Alexa failed to take medications prescribed for rheumatoid arthritis, suggesting pain is not as significant as alleged. In April 2010 treating Dr. Deakins notes a history of somewhat poor medical compliance. The failure to seek regular mental counseling as an adult suggests mental health symptoms are not as significant as alleged. Alexa acknowledged better concentration and feeling less moody and sad when she took prescribed psychotropic medications, but stopped taking them (Tr. 21-22, 24-25, 347, 376, 629, 635, 641, 648, 651, 695). Alexa testified she has no motivation to return to work, strongly suggesting she is

motivated by secondary gain rather than disabling limitations. She reported a medication caused hair to fall out by the "handfuls," but no hair loss was observed by the treatment provider. In October 2009 she drove across the country (Tr. 21-23, 77, 552, 623, 656).

The ALJ's reasons for the credibility determination are clear, convincing and supported by substantial evidence. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (proper to consider unexplained failure to follow recommended treatment and lack of treatment, lack of medical evidence, and daily activities); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)(proper factors include inconsistencies in plaintiff's statements and inconsistencies between statements and conduct).

The ALJ properly found complaints of daytime sleepiness did not constitute a severe impairment at step two, based on his assessment of her credibility as well as the medical evidence.

Alexa alleges the ALJ should have found PCOS, somatoform disorder and personality disorder are severe impairments. ECF No. 17 at 11-12. As support she alleges PCOS contributes to weight gain, citing Tr. 59. The ME reviewed the record and testified PCOS is a contributor to weight gain but causes no other problems (Tr. 59). The ALJ accurately observes there is a "dearth" of evidence supporting any severe limitations caused by PCOS (Tr. 21). Alexa fails to

adequately support this allegation.

Somatoform disorder and personality disorder were found non-severe based on the evidence, but even if this was error it is clearly harmless. Dr. Bostwick assessed a moderate limitation in the ability to work directly with the public and mild limitations in the ability to relate to co-workers and supervisors (Tr. 669). The ALJ adopted these limitations. Alexa points to nothing reliable in the record showing greater mental limitations. Because the ALJ included the assessed mental limitations, any error at step two error is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)(because the ALJ considered any limitations posed by an impairment, even though it was not listed at step two, the step two error is harmless).

**B. Testifying medical expert**

Sergio Bello, M.D., testified at the hearing (Tr. 46-62, 155). Plaintiff's brief states:

"The ME at the hearing opined the mental problems would preclude Alexa working a 40 hour week but the ME is not a psychologist. The ALJ did not include a psychologist or psychiatrist as an ME at the hearing, rather, he determined on his own the mental limitations, ignoring the personality [disorder] found by Dr. Bostwick whose opinion he gave significant weight." ECF No. 17 at 14.

As noted, the ALJ *adopted* the limitations Dr. Bostwick assessed. Alexa

points to no additional psychological limitations the ALJ should have adopted.

Nor was the ALJ required to call a psychologist to testify at another hearing. The ALJ followed Dr. Bello's suggestion at the hearing and authorized Dr. Bostwick to perform a complex psychological examination following the hearing. Bostwick administered tests and reviewed prior evaluations (Tr. 59-61, 658-59, 660-62). Rather than "acting as his own ME" as Alexa alleges (ECF No. 17 at 14-15), the ALJ reviewed and properly considered Dr. Bostwick's report before issuing his decision.

**C. RFC**

Alexa alleges the ALJ failed to include all limitations when he questioned the VE, specifically the limitations assessed by Dr. Dalley and by testifying expert Dr. Bello. ECF No. 17 at 15-18.

Alexa admits Bello's testimony with respect to mental limitations is at best ambiguous: the ME thinks plaintiff would not be able to sustain a 40 hour work week when mental limitations are added but this is not his specialty and the file requires further review. ECF No. 17 at 17-18; Tr. 50, 52, 56-57, 59-61. Moreover, Dr. Bello testified Alexa would probably be able to sustain a full work week at the sedentary level when only physical limitations are considered (Tr. 57). The ALJ is responsible for resolving ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Here, he relied on the opinion of the psychologist who

reviewed the entire record, administered testing and was the specialist in mental impairments. There was no error in the ALJ's assessment of this evidence.

With respect to Dr. Dalley's assessed dire limitations, the ALJ properly rejected them because Dalley's own testing showed gross exaggeration (Tr. 24, 479-81, 484-86). This is a specific, legitimate reason for rejecting an examining source's contradicted opinion.

The record supports the ALJ's decision.

Although Alexa alleges the ALJ should have weighed the evidence differently, the ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

The ALJ's determinations are supported by the record and free of harmful legal error.

## CONCLUSION

After review the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED**:

1. Defendant's motion for summary judgment, **ECF No. 18**, is **granted.**

2. Plaintiff's motion for summary judgment, ECF No. 16, is denied.

The District Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of defendant, and **CLOSE** the file.

DATED this 27th day of August, 2013.

s/James P. Hutton

JAMES P. HUTTON

UNITED STATES MAGISTRATE JUDGE